UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANNETTE GONZALEZ,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

Defendant.

Case No. C08-0093 MJP

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendant's motion for summary judgment. The Court has considered the motion (Dkt. No. 42), Plaintiff's response (Dkt. No. 47), Defendant's reply (Dkt. No. 51), all pertinent documents in the record, and the parties' presentations at oral argument. For the reasons set forth below, the Court GRANTS Defendant's motion.

## Background

Defendant Amtrak hired Plaintiff Gonzalez in March 2005 as a part-time Coach Cleaner and promoted her to a full-time Laborer position in June 2006. (Duncan Decl., Exs. 1-2.) Plaintiff was trained for her new position by Minh Ngo, one of her fellow Laborers. (Id. ¶ 8.) A Laborer is responsible for several tasks, including "sanding" the train engines, "picking up the pits" (cleaning an area beneath the trains), picking up trash in the train yard, and tying up and compressing boxes. (Davis Decl., Ex. B at 64:5-23; 123:3-130:10.) Each Laborer receives different assignments each day. (Davis Decl., Ex. B at 123:3-130:10; Ex. C at 23:3-25.) Laborers work under the supervision of several Foremen, including Mark Ragle

ORDER - 1

and Tom Walker. (Davis Decl., Ex. B at 43:19-44:1; 45:17-20.) The Superintendent of the Seattle facility, Jeff Duncan, supervises the Foremen. (Duncan Decl. ¶ 2.)

Starting in August 2006, Plaintiff complained that she felt she was receiving a heavier workload and more difficult tasks than the male Laborers. (Davis Decl., Ex. B at 74:13-24; 96:13-17; 101:8-10; 168:5-169:12.) Plaintiff also felt that Minh Ngo's behavior toward her was hostile and motivated by her gender. (Gonzalez Decl. ¶¶ 8-12; Davis Decl., Ex. B at 84:10-89:8.) When Plaintiff could not work things out with Mr. Ngo directly, she complained about his behavior to Mr. Ragle. (Davis Decl., Ex. B at 101:16-102:14.)

On February 11, 2007, Larry Johnson, a Machinist, relayed to Plaintiff that Mr. Ngo told him that Plaintiff "just want[ed] to lay around in the ladies locker room complaining about [her] pussy and [her] period and [her] cramps and how [her] vagina hurts and that's all you bitches do." (Gonzalez Decl. ¶ 12.) Plaintiff complained about what she had heard, first to Foreman Tom Walker and later to Superintendent Duncan. (Black Decl., Ex. D at 000861-62; Gonzalez Decl. ¶ 13; Davis Decl., Ex. B at 226:13-227:24.)

In response to Plaintiff's complaint, Mr. Duncan instructed Mr. Walker to separate Plaintiff from Mr. Ngo in work assignments. (Duncan Decl. ¶ 11.) On February 13, 2007, Mr. Duncan reported Plaintiff's complaint to the Amtrak Dispute Resolution Office ("DRO") in order to begin the formal investigation process. (Duncan Decl. ¶ 10.) In March 2007, Investigator Rickie Donofrio interviewed Plaintiff regarding the complaint. (Donofrio Decl. ¶ 4.) Ms. Donofrio then traveled to Seattle in August, 2007, to interview several Amtrak employees involved in the incident, including Mr. Ngo. (Black Decl., Ex. K at 1.) During the interview, Ms. Donofrio chastised Mr. Ngo so loudly that Mr. Duncan heard it through the wall. (Duncan Decl. ¶ 12.) She told Mr. Ngo that his behavior was unacceptable and must stop immediately. (Donofrio Decl. ¶ 6.) After the interview, Mr. Ngo offered to apologize to Plaintiff, but Plaintiff refused. (Id. ¶ 7.) Ms. Donofrio wrote to Plaintiff in September 2007, informing her that all but one of Plaintiff's allegations against Mr. Ngo had been confirmed

ORDER - 2

during the investigation, stating that "appropriate action" had been taken, and closing the file on the matter. (Black Decl., Ex. K.) Mr. Duncan brought formal charges against Mr. Ngo as well. (Donofrio Decl. ¶ 9.) Amtrak held a disciplinary hearing on December 11, 2007, where the charges against Mr. Ngo were dismissed. (Gonzalez Decl. ¶ 32; Black Decl. ¶ 19.)

After receiving the letter closing the file from the DRO in September, Plaintiff completed an EEOC intake questionnaire and charge of discrimination regarding Mr. Ngo's statement to Larry Johnson. (Black Decl., Ex. I.) In October 2007, the EEOC informed Plaintiff that it was unable to conclude that a violation of the relevant statutes had occurred and closed the file on Plaintiff's charge. (Black Decl., Ex. N.)

Also in October, Plaintiff again complained to Mr. Ragle about the double-standard she perceived between how she and the male Laborers were treated. (Gonzalez Decl. ¶ 24.) Mr. Ragle responded, "Here we go again. You're going to call diversity." (Id. ¶ 25.) Mr. Ragle then reported his comment to Mr. Duncan, and the incident was reported to the DRO. (Davis Decl., Ex. C at 60:5-21.) On November 9, 2007 Plaintiff filed a second charge with the EEOC, stating that Mr. Ragle's comment was made in retaliation for her previous complaint of discriminatory conduct. (Black Decl., Ex. O.) The EEOC responded on November 29th that it was unable to find a violation based on Plaintiff's allegations. (Black Decl., Ex. P.) Plaintiff filed her complaint with this Court on January 18, 2008. (Dkt. No. 1.)

Analysis

Defendant moves for summary judgment on Plaintiff's claims, under Title VII and the Washington Law Against Discrimination ("WLAD"), of sexual harassment and retaliation, as well as on her common law tort claim of outrage. (Dkt. No. 42.) Although Plaintiff argues that she also pled a gender discrimination claim, she does not present facts that would support a prima facie case for such a claim.

1. Summary Judgment Standard

Summary judgment is appropriate if the evidence on file shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to make this showing. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to establish the existence of an issue of material facts. Id. at 323-34. The nonmoving party may not rely on its pleadings, but instead must provide evidence demonstrating a genuine issue for trial. Id. 324. On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).

2. Sexual Harassment Charge

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits sexual discrimination in employment. 42 U.S.C. § 2000e-2(a)(1) (2007). Title VII's prohibition against discrimination also extends to sexual harassment and hostile work environments. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). Because WLAD tracks federal discrimination law, a plaintiff's federal and state discrimination claims may be analyzed together. Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).[1]

An employer is liable for a hostile environment created by co-workers only if, after learning of the harassing conduct, the employer takes no "adequate remedial measures." Yamaguchi v. United States Dept. of the Air Force, 109 F.3d 1475, 1483 (9th Cir.1997). Remedial measures should be "reasonably calculated to end the harassment." Fuller v. City of Oakland, 47 F.3d 1522, 1528 (9th Cir. 1995) (quotations omitted). To satisfy its remedial obligation, the employer must first take temporary steps to deal with the situation, and then it must take permanent remedial steps. Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001)

---

[1] Plaintiff mistakenly asserts that Defendant does not address her WLAD claims. (Dkt. No. 47 at 2.) Defendant's motion notes that because Washington discrimination law parallels that of Title VII, it is appropriate to consider both state and federal claims together. (Dkt. No. 42 at 11.)

ORDER - 4

(citations omitted). Defendant argues that because it took effective remedial actions as required by <u>Swenson</u>, summary judgment is proper on Plaintiff's sexual harassment claim.

### a. Temporary Remedial Steps

No genuine issue of fact exists as to whether Defendant took temporary remedial measures. The <u>Swenson</u> court found that where no further harassment resulted after the employer's separation of the harasser from the employee, the separation was an adequate remedial measure. <u>Id.</u> at 1192-93 (noting that the "degree of separation . . . must be a function of the severity of the alleged harassment"). In this case, Mr. Duncan instructed Foreman Walker to separate the two Laborers in their work locations. (Duncan Decl. ¶ 11.) Mr. Walker assigned Plaintiff to work inside in the warehouse and Mr. Ngo to work outdoors in the "pit" washing an engine. (Black Decl., Ex. D at 000862; Davis Decl., Ex. B at 162:25-163:24.) Plaintiff acknowledged that after her complaint (and the subsequent separation), Mr. Ngo did not bother her any more: "it was like his lips were sealed." (Black Decl., Ex. M.) Although Plaintiff argues that she and Mr. Ngo were not actually separated, she provides no specific facts to support that contention. (Gonzalez Decl. ¶ 17.) There is no dispute that the separation occurred and that Mr. Ngo's harassing conduct ended. Thus, the separation was an adequate remedial measure.

In addition to separating the employees, Defendant also immediately began an investigation. (Duncan Decl. ¶ 10.) A prompt investigation is the most significant immediate measure an employer can take. <u>Swenson</u>, 271 F.3d at 1193. Plaintiff argues that the investigation was inadequate remedial measure because it took seven months to complete and the Laborer's Collective Bargaining Agreement ("CBA") prohibits disciplinary action more than thirty days after the transgression. (Dkt. No. 47 at 19-20.) However, the CBA expressly provides that the employer can bring charges against an employee more than thirty days after learning of the offense if a civil or criminal action results. (Duncan Decl., Ex. 3 at D10307.) In this case, because Plaintiff filed this lawsuit in response to the offense, the thirty-day period

ORDER - 5

does not apply.  Both the employee separation and the prompt initiation of the investigation constitute temporary remedial measures.

> b. Permanent Remedial Steps.

The parties also do not dispute the actions constituting Defendant's permanent responses. An employer must take permanent remedial steps that are reasonably designed to end the harassment. Swenson, 271 F.3d at 1192. The Ninth Circuit has held that counseling or admonishing the offender may be sufficient. Star v. West, 237 F.3d 1036, 1038-39 (2001) (employer's admonishing and warning harasser constituted a remedial measure). The parties do not dispute that in August 2007 Ms. Donofrio interviewed Mr. Ngo, or that after the meeting Mr. Ngo attempted to apologize to Plaintiff. (Donofrio Decl. ¶¶ 6, 7; Dkt. No. 42 at 9; Dkt. 47 at 20.) Although Plaintiff argues that this meeting does not legally constitute a "prompt remedial action," she disputes neither the meeting's occurrence nor its results. (Dkt. No. 47 at 20.) The parties also do not dispute that, upon Ms. Donofrio's completion of the investigation, Mr. Duncan requested formal charges against Mr. Ngo and that a disciplinary hearing was held. (Dkt. No. 42 at 11; Dkt. No. 47 at 11.)

Plaintiff's argument that the steps taken were insufficiently prompt is unavailing. Swenson distinguishes between employer responses that must be "immediate" and those that must be "permanent." Swenson, 271 F.3d at 1192. In Swenson, the employer's permanent steps were sufficient when they were taken at the conclusion of the investigation, several months later. Id. at 1189-90. Here, Ms. Donofrio chastised Mr. Ngo during the investigation, approximately six months after Plaintiff's initial complaint, and formal charges were filed at the completion of the investigation. Plaintiff's argument that Defendant took no "disciplinary" action also fails. (Dkt. No.47 at 19-21.) The Ninth Circuit has held that an employer's responses to a complaint need not be labeled "disciplinary" to qualify as remedial actions. Star, 237 F.3d at 1038-39. Therefore, Ms. Donofrio's meeting in which she chastised Mr. Ngo constitutes an adequate remedial action.

Because no genuine issue of material fact exists regarding Defendant's remedial measures, summary judgment on Plaintiff's sexual harassment claim is appropriate.

3. Retaliation Charge

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee who "opposed any practice" outlawed by Title VII. 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). For Plaintiff to make out a prima facie case of retaliation, she must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the adverse action. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003). An adverse employment action is one that is "materially adverse," which means that it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N., 548 U.S. at 68. Because WLAD tracks federal retaliation law, a plaintiff's federal and state retaliation claims may be analyzed together. Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 797 (2005).

The parties do not dispute the facts underlying Plaintiff's retaliation claim, but these facts do not create a prima facie case for retaliation. Although Plaintiff engaged in a protected activity, she cannot show that Mr. Ragle's comment to her was materially adverse.[2] The Supreme Court has stated that "normally, petty slights, minor annoyances, and simple lack of good manners" will not amount to materially adverse actions. Burlington N., 548 U.S. at 68. The Eight Circuit holds that an employer action is not materially adverse when it has no negative impact on the employee's job performance or status. Higgins v. Gonzalez, 481 F.3d 578, 584-85 (8th Cir. 2007) (concluding that employer took no adverse employment action when it changed employee's job duties, recommended her for termination, and transferred her

---

[2] Plaintiff alleges a number of supposedly retaliatory actions. (See Dkt. No. 1 at ¶¶ 3.24, 3.26, 3.32.) However, because Plaintiff complained to the EEOC only of Mr. Ragle's comment to her, she was given the right to sue only in regards to that comment. B.K.B v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002) (noting that unrelated allegations not included in a plaintiff's charge of discrimination may not be considered). Therefore, the Court considers only whether this comment constitutes retaliation under Title VII and WLAD.

ORDER - 7

to another office). On October 25, 2007, in response to Plaintiff's complaint about unequal work assignments, Foreman Ragle said, "Here we go again. You are going to call diversity." (Gonzalez Decl. ¶ 26.) Mr. Ragle's comment does not rise above a petty slight. Plaintiff does not contend that Mr. Ragle's comment interfered with her job performance, compensation, or hours. Therefore, the comment cannot constitute a retaliatory action. Plaintiff's retaliation claim fails as a matter of law and summary judgment is proper.

### 4. Outrage and Intentional Infliction of Emotional Distress

To prevail on a claim for outrage, Plaintiff must demonstrate: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress on the part of the plaintiff. Robel v. Roundup Corp., 148 Wn.2d 35, 51 (2002) (citing Grimsby v. Samson, 85 Wn.2d 52, 60 (1975) (adopting the standards set forth in the Restatement (Second) of Torts § 46(2))). The Washington Supreme Court interprets the first element to mean conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Dicomes v. State, 113 Wn.2d 612, 630 (1989). Summary judgment should be denied "if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." Id.

Even when the events already discussed are viewed in the light most favorable to Plaintiff, the evidence offered does not meet this high burden. In one of the few cases in which the court found this first element to be met, the plaintiff's supervisor and co-workers insulted her to her face with obscene sexist slurs. Robel, 148 Wn.2d at 40-41 (plaintiff was called "cunt" and "fucking bitch"). This Court has previously held that neither failure to properly investigate a discrimination claim nor termination of employment can meet this first element. Hancock v. State, No. 06-0668-MJP, 2007 WL 1367600, at *6 (W.D. Wash. May 7, 2007). Defendant's purportedly inadequate separation of Plaintiff and Mr. Ngo is not sufficiently outrageous; nor is the delayed investigation, her supervisors' reprimands and

ORDER - 8

1 irritable comments, or her co-workers' snubs. Reasonable minds could not differ. Therefore,

2 Plaintiff cannot meet the first element of her claim of intentional infliction of emotional

3 distress. Because Plaintiff cannot satisfy the first element of the claim, summary judgment is

4 proper.[3]

5     5. <u>Gender Discrimination Charge</u>

6     Though it is not clear that Plaintiff brings this claim at all, Plaintiff references a claim

7 for gender discrimination.[4] (<u>See</u> Dkt. No. 47 at 17). However, even if such a claim exists,

8 Plaintiff alleges insufficient facts to plead a prima facie case. To bring a valid claim of gender

9 discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she

10 performed her job satisfactorily; (3) that she suffered an "adverse employment action"; and

11 (4) that she was treated less favorably than a similarly situated employee from an unprotected

12 class. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Cornwell v. Electra

13 Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006) (stating elements in a race

14 discrimination case). Plaintiff cannot show that she suffered an adverse employment action.

15 In a gender discrimination claim, an employment action is adverse if it "'materially affect[s]

16 the compensation, terms, conditions, or privileges of . . . employment.'" <u>Davis v. Team Elec.

17 Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d

18 1115, 1123-24 (9th. Cir. 2000)). Here, Plaintiff presents no evidence that any of the allegedly

19 discriminatory actions she experienced affected the terms and conditions of her employment.

20 Therefore, even if Plaintiff's complaint can be read to include the claim, Plaintiff did not

21 plead a prima facie case of gender discrimination.

---

[3] Even if the first element were met, Plaintiff cannot establish the second. Plaintiff provides no evidence to suggest that Defendant or any of its personnel intentionally or recklessly caused Plaintiff to experience severe emotional distress.

[4] Plaintiff's complaint does not specify her individual causes of action; it merely states the statutes (42 U.S.C. § 2000e et seq. and RCW 49.60 et seq.) under which she brings them.

ORDER - 9

## Conclusion

Because undisputed evidence demonstrates that Defendant took adequate remedial action in response to Plaintiff's complaints, her sexual harassment claim fails as a matter of law. Summary judgment is also appropriate on Plaintiff's retaliation claim because Mr. Ragle's comment to Plaintiff was not materially adverse. Finally, Plaintiff fails to bring a valid claim of outrage because Defendant's conduct was not extreme and outrageous. Thus, summary judgment is appropriate on all Plaintiff's claims.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

DATED this 27th day of March, 2009.

Marsha J. Pechman
United States District Judge

ORDER - 10